IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-169 |
| | ) | |
| ANDREW AUGUSTYNIAK-DUNCAN | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

AND NOW, comes the Defendant, Andrew Augustyniak-Duncan, by and through his attorneys, Michael E. DeMatt, Esquire, and the law firm of Turin & DeMatt, P.C., and files the within SENTENCING MEMORANDUM:

## SENTENCING GUIDELINE CALCULATION

The Unites States Probation Office correctly states in the Presentence Investigation Report ("PSIR") that the guideline section for the most analogous offense to the offense of conviction is USSG §2A2.4 (Obstructing or Impeding Officers), with a base offense level of 10. This indication is consistent with this court's ruling in a related case, United States v. Brian Bartels, No. 2:20CR00116-001 (See Tentative Findings filed January 19, 2021, Doc. 53).

Beyond this base offense level, the court must look to defendant's relevant conduct, pursuant to USSG §1B1.3. In the instant matter, there is a stipulation that Mr. Augustyniak-Duncan threw objects in the direction of law enforcement officers, while they were in full riot gear. However, there is nothing to indicate where these objects landed, nor is there anything that indicates that anything thrown by Mr. Augustyniak-Duncan actually struck anyone. Importantly, other individuals were seen to be throwing objects toward the officers during the same timeframe.

In short, there is nothing to indicate that Mr. Augustyniak-Duncan's actions actually *caused* injury to anyone. Certainly, his actions *could* have resulted in someone being injured, but there is no evidence that he actually did cause such injury. For this reason, defendant maintains that the Probation Department erred in adding 2 levels to the offense level pursuant to USSG §2A2.4(b), which states, "If the victim sustained bodily injury, increase by 2 levels."

The government, however, is seeking a much higher guideline range, claiming that this court should apply the aggravated assault guideline at USSG §2A2.2. Aggravated Assault is defined in the application notes[1] as: "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." For the reasons stated above, with respect to the 2-level bodily injury offense level increase, there is no evidence that Mr. Augustyniak-Duncan actually caused any harm to any officer. As such, any injury -- regardless of severity -- cannot be attributed to Mr. Augustyniak-Duncan; such injury would not be relevant conduct by the defendant.

Additionally, the argument that the defendant engaged in a felonious assault that involved "a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon," falls short as well. The evidence indicates that hard objects were thrown towards police officers in full riot gear, which included helmets and body armor. With the officers protected by this armor, it is not reasonable to assume that the intent of someone throwing objects in their direction would be anything more than trying to obstruct or impede their progress, or at the most to frighten them. Someone throwing objects at the officers while such officers are clad in full body

---

[1] This court should use caution in relying too heavily in the application notes after the Third Circuit's holding in United States v. Nasir, 982 F.3d 144 (3d Cir. 2020)

armor could reasonably assume that objects such as rocks, pipes or chunks of concrete would not cause injury to such armored officers.

As such, defendant respectfully submits that the applicable guideline imprisonment range should be 18 to 24 months, as set forth in the Position with Respect to Sentencing Factors, filed at Document 49.

## **SECTION 3553 FACTORS**

As there can be overlap between the various 3553 factors, many facts relevant to one factor may also be relevant to other factors. As such, the argument below should be read as a whole, with an understanding that some facts mentioned with respect to one factor can and should be considered with respect to other factors.

For the reasons stated herein, defendant is seeking a variance below the guideline range, with mental health and substance abuse evaluation and treatment.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1)**

Mr. Augustyniak-Duncan has been incarcerated on the within matter since January 7, 2021. There is also a pending state case arising out of the same exact factual circumstances as the within matter, for which he has been held since June 29, 2020.[2] All of the time he has been incarcerated has been during the COVID-19 pandemic. As such, the time he has spent in pre-sentence incarceration has been more onerous than under normal circumstances due to the COVID-19 pandemic and the restrictions which have accompanied the pandemic. Opportunities to better one's self are more difficult, as programs were shut down due to COVID. While incarceration is

---

[2] See Paragraph 45 of PSIR referencing case no. CP-02-CR-0000218-2021.

never supposed to be easy, incarceration during COVID is a much more restrictive and difficult time to serve. While incarcerated at Allegheny County Jail, Mr. Augustyniak-Duncan has been subjected in numerous occasions to "23 and 1" lockdown, meaning he would be restricted to his cell for 23 hours in a day, with only one hour outside the cell. Such restriction is common for a death-row inmate, not for an individual in pretrial detention. Because of this, the court should take into account the fact that a year in prison during COVID is much harsher than a year in prison outside of COVID. Of course, there have been some recent spikes in COVID cases, and the current risk to prisoners is much more elevated now than it was only a few months ago.[3]

Andrew Augustyniak-Duncan would submit that he owes his criminal history, as well as the instant matter, to a substantial substance abuse and mental health history. (PSIR ₱58-68). Mr. Augustyniak-Duncan was exposed to marijuana in his teens, but graduated to harder drugs, such as cocaine, LSD, party drugs and heroin by his early 20s. (PSIR ¶63-65).

Although Mr. Augustyniak-Duncan has received some substance abuse rehabilitation in the past, it is believed that he may not have received the appropriate type of care. This is due to his extensive mental health history, which includes diagnoses of ADHD, paranoid schizophrenia, depression, and psychotic disorder. (PSIR ₱58-60). A large percentage of individuals with substance use disorder also have co-occurring mental health disorders.[4] These co-occurring

---

[3] Numerous pods at ACJ have been subject to quarantine due to outbreaks at the facility. https://www.pghcitypaper.com/pittsburgh/allegheny-county-jail-covid-cases-rise-half-of-employees-and-incarcerated-individuals-currently-vaccinated/Content?oid=20009646 (accessed August 24, 2021).
[4] Laudet, et al., "Support, Mutual Aid and Recovery from Dual Diagnosis," https://www.ncbi.nih.gov/pmc/articles/PMC1868661/ (accessed June 29, 2020) ("The rate of co-occurring substance abuse and mental health disorders in the United States ranges between 29% and 59%. Such comorbidity is associated with poor prognosis and with 'revolving door' treatment admissions. Recovering from dual-diagnosis requires more than abstaining from illicit substances and complying with mental health treatment, although these two steps may be considered necessary. Recovery is a long-term, gradual process that requires time, hard work and commitment; it also requires skills and strategies to cope with novel, sometimes stressful, situations and with painful feelings about the past, such as grief and loss.") (internal citations omitted).

disorders complicate matters, making such disorders more difficult to treat.[5] Disorders such as ADHD, bi-polar, depression, and generalized anxiety disorder are all common mental health disorders linked to substance abuse.[6]

Data shows that dual diagnosis treatment will lead to more favorable results for an individual than treating mental health separately from substance abuse.[7] Despite this, most or many current treatment programs tend to treat one or the other disorder separately from each other.[8] As such, for Mr. Augustyniak-Duncan to have the best chance of success moving forward, it is important that he receive appropriate treatment, to include dual diagnosis treatment, to effectively address the fact that he has significant underlying mental health issues which exacerbate his substance abuse.

Having support has been shown to increase the efficacy of treatment in conjunction with dual diagnosis treatment.[9] Thankfully, as can be seen in the letters of support attached hereto, Mr. Augustyniak-Duncan has a strong support system. With this strong support system and proper dual diagnosis treatment, Mr. Augustyniak-Duncan can successfully recover, where he has failed in the past.

---

[5] *Id.*
[6] "Dual Diagnosis," http://addictioncenter.com/addiction/dual-diagnosis/ (accessed June 29, 2020).
[7] McGovern, et al, "Dual diagnosis capability in mental health and addiction treatment services: An assessment of programs across multiple state systems." https://www.ncbi.nih.gov/pmc/articles/PMC3594447/ (accessed June 29, 2020).
[8] *Id.* ("Although public awareness has been raised, and systemic motivation enhanced, recent findings from a national study conducted by the Substance Abuse and Mental Health Services Administration (SAMHSA) suggest individuals with co-occurring substance use and psychiatric disorders continue to receive disparate case that targets *either* the psychiatric *or* substance use disorder. This remains the case despite the preponderance of evidence that suggests integrated treatments are associated with improved patient outcomes.") (emphasis in original) (internal citations omitted).
[9] Laudet, *supra*. ("[I]t was hypothesized that higher levels of perceived support and more participation in 12-step mutual aid groups would be associated with more successful recovery (less mental health symptoms and substance use) and with higher levels of personal well-being. The hypothesized associations among support, dual recovery and well-being were confirmed.")

**2.     The need for the sentence imposed. 18 U.S.C. § 3553(a)(2)**

   *a.     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

In fashioning a sentence, "[t]he court shall impose a sentence sufficient, but not greater than necessary . . ." 18 U.S.C. § 3553(a).

For the reasons stated herein, this court should impose a sentence which addresses the root causes of Mr. Augustyniak-Duncan's behavior. His actions have been governed by substance abuse, along with there may be some significant mental health issues which have interfered with his ability to sufficiently address his significant substance abuse disorder.

Any sentence which allows Mr. Augustyniak-Duncan to obtain a mental health and substance abuse evaluation and participate in appropriate treatment as a result thereof, would be sufficient. Any sentence longer than that necessary to address these root causes of his behavior would be greater than necessary. As such, Mr. Augustyniak-Duncan respectfully requests that this court grant a variance and impose a sentence below the guideline range.

   *b.     to afford adequate deterrence to criminal conduct.*

Research has shown that the certainty of being caught provides a greater deterrent effect on crime than the severity of the punishment.[10] Increasing the punishment does little to deter a person's conduct.[11]

---

[10] "Five Things About Deterrence." https://nij.ojp.gov/topics/articles/five-things-about-deterrence. (accessed June 30, 2020)

[11] *Id.*

Rather, as argued herein, the best way to deter future criminal behavior is to address the root cause of such behavior. A sentence as requested above would result in the best deterrent to criminal conduct.

### c. *to protect the public from further crimes of the defendant.*

As stated above, the reason Mr. Augustyniak-Duncan has been committing crimes such as that before this court, as a result of the confluence of is his substance abuse addiction and mental health issues. If the cause of his behavior is treated, rather than just the symptoms, he has a much better chance at beating his addiction and being a productive member of society. Under such circumstances, the public would be protected from further crimes of the defendant. Without substance abuse, and with proper mental health treatment, Mr. Augustyniak-Duncan would not be committing these crimes.

Mr. Augustyniak-Duncan acknowledges his wrongdoing, and recognizes his need for treatment. He is not hiding from his actions, but acknowledging his faults, which will allow him to move in a positive direction in the future. This court may impose a term of supervised release of up to three years, during which time he may be required to follow up with substance abuse treatment. See *e.g.* United States v. Grossman, 513 F.3d 592 (6th Cir. 2008) (affirming a downward variance from 120 months to 66 months with 10 years supervised released, and observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release.")

  ***d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.***

  Again, it is vital that Mr. Augustyniak-Duncan receive appropriate treatment for his substance abuse and co-occurring mental health disorders. He should participate in the RDAP program, since substance abuse has been a root cause of his legal troubles.

**3.  The kinds of sentences available. 18 U.S.C. § 3553(a)(3).**

  As the court is well aware, the guideline range is only advisory, and the court is not bound by the applicable guideline range. United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). There are no mandatory sentences applicable to this within case, so the court is free to depart from the guidelines.

**4.  The need to avoid unwarranted disparity among defendants with similar records and similar crimes. 18 U.S.C. § 3553(a)(6).**

  By considering the applicable guideline range, but tailoring the appropriate sentence to the individual characteristics of Mr. Augustyniak-Duncan, this court would be avoiding unwarranted disparity among defendants with similar records and similar crimes. In particular, any deviation from the guidelines based upon the specific characteristics and circumstances presented in the within matter would necessarily not be "unwarranted" as such deviation would be based upon the appropriate § 3553 factors as described herein. See *e.g.* Gall v. United States, 552 U.S. 38 (2007) (district court "considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated.")

**5.      The need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7).**

Restitution is not applicable to this case (PSIR ¶¶86-87).

## CONCLUSION

For the reasons stated above, as well as additional reasons which may be addressed at the time of sentencing, Mr. Augustyniak-Duncan requests that this court sentence him below the standard guidelines range.

Respectfully submitted,
TURIN & DEMATT, P.C.


*s/ Michael E. DeMatt*
Michael E. DeMatt, Esquire
Attorney for Defendant

115 North Main Street
Greensburg, PA  15601

(724) 838-1400
