1

1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3

    UNITED STATES OF AMERICA,
4
        vs.
5                                    Criminal No. 20-169
    ANDREW AUGUSTYNIAK-DUNCAN,
6
                    Defendant.
7

8                        - - -

9

    Transcript of proceedings on December 14, 2021 United
10  States District Court, Pittsburgh, Pennsylvania, before
    Judge Arthur J. Schwab.
11

12
    APPEARANCES:
13
       For the Government:    Jonathan Lusty, Esq.
14

15     For the Defendant:     Michael E. DeMatt, Esq.

16
       Court Reporter:        Marsia L. Balobeck
17

18

19

20

21

22

23

24

25       Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.

P R O C E E D I N G S

1
2
3      THE COURT:  Good morning.  This is the time and place
4  set for sentencing in criminal number 20-00169.  I'd ask
5  counsel for the government to enter your appearance, please.
6      MR. LUSTY:  May it please the Court, Jonathan Lusty
7  on behalf of the government.
8      THE COURT:  On behalf of defendant, please?
9      MR. DEMATT:  Michael DeMatt on behalf of
10  Mr. Augustyniak-Duncan.
11      THE COURT:  Sir, would you kindly stand to be sworn,
12  please.
13      (ANDREW AUGUSTYNIAK-DUNCAN was duly sworn)
14      THE DEPUTY CLERK:  You may be seated.
15      THE COURT:  And whenever you speak, you all can take
16  your mask if you're comfortable in doing that.
17      The court notes for the record that on June 2, 2021,
18  defendant entered a plea of guilty to count one of a one-count
19  indictment, charging the defendant with obstruction of law
20  enforcement during civil disorder in violation of Title 18
21  United States Code Section 231(a)(3) and Section 2.
22      Following the guilty plea, the Court directed the
23  probation office to prepare a pre-sentence investigation
24  report and scheduled a sentencing hearing for October 13,
25  2021.

1          Because of objections raised by the parties with

2     respect to the defendant's final pre-sentence investigation

3     report, which this court determined required an evidentiary

4     hearing and additional briefing, defendant's sentencing

5     hearing was continued to today, December 14, 2021.

6          The court has received and reviewed the pre-sentence

7     investigation report and addendum thereto prepared by the

8     United States probation office.  The Court has also reviewed

9     the government's position with respect to sentencing factors

10    and defendant's position with respect to sentencing factors.

11         By the way of summary only, the government asserts

12    that defendant's conduct in this case constituted aggravated

13    assault and thus, pursuant to Section 2A2.4(c)(1) of the

14    United States sentencing guidelines, section 2A2.2 of the

15    guidelines should be applied to determine defendant's offense

16    level.

17         Accordingly, the government objected to Paragraph 20

18    of the final pre-sentence investigation report because it

19    calculated defendant's base offense level under Section 2A2.4

20    and not under 2A2.2.  The government then contends that

21    defendant's offense level should be increased by four levels

22    under Section 2A2.2(b)(2)(B) because a dangerous weapon was

23    used by the defendant, and should be increased by three levels

24    under 2A2.2(b)(3)(A) because the victims, police officers,

25    working during a civil disorder on May 30, 2020, sustained

1   bodily injuries -- in other words -- concussions, as part of

2   the result of defendant's actions.

3            To the contrary, defendant asserts that his conduct

4   in this case does not constitute aggravated assault, and thus

5   defendant's offense level should be calculated pursuant to

6   2A2.4.

7            Defendant then objects to Paragraph 21 of the

8   pre-sentence investigation report wherein two levels were

9   added to defendant's base level pursuant to Section 2A2.4(b)

10  on the basis that as a result of defendant's conduct on May

11  30, 2020, at least one police officer sustained bodily injury.

12           Defendant also asserts that with respect to Paragraph

13  31 of the pre-sentence investigation report, wherein it

14  states:  "Defendant beat the victim to the point of

15  unconsciousness with a metal baseball bat," that this

16  statement should not be included in the pre-sentence

17  investigation report because such statement is consistent with

18  aggravated assault, which charges were withdrawn, and not a

19  simple assault, for which the defendant was eventually

20  convicted in a different situation.

21           On December 13, 2001, the court issued tentative

22  findings and rulings, indicating that the defendant's conduct

23  in this case constituted aggravated assault, and thus pursuant

24  to 2A2.4(c)(1) of the guidelines, Section 2A2.2 would be

25  applied to determine defendant's offense level.

1          The court also determined that based on its ruling

2     that it would apply 2A2.2 in determining defendant's offense

3     level and that defendant's base level shall not increased by

4     two levels pursuant to Section 2A2.4(b), as set forth in

5     Paragraph 21 of the pre-sentence investigation report, which

6     renders defendant's objection to Paragraph 21 of the

7     pre-sentence investigation report moot.

8          The court also determined defendant's offense level

9     should be increased by four levels under Section

10    2A2.2(b)(2)(B) because a dangerous weapon was used by

11    defendant, but that it should not be increased by three levels

12    under Section 2A2.2(b)(3)(A) because the government did not

13    sufficiently establish that any police officer working during

14    the civil disorder on May 30, 2020 sustained bodily injury as

15    a result of the defendant's action.

16         Finally, the court concluded as to Paragraph 31 of

17    the pre-sentence investigation report that, one, the statement

18    defendant objected to in that paragraph had no effect on

19    either defendant's offense level or criminal history category

20    calculation, and therefore no effect on the advisory

21    guidelines sentencing range applicable to defendant in this

22    case.

23         And, two, Title 18 United States Code Section 3661

24    provides that "no limitation shall be placed on the

25    information concerning the background, character and conduct

1    of a person convicted of an offense which a court in the

2    United States may receive and consider for the purposes of

3    imposing an appropriate sentence."  The court adopts the

4    tentative findings and rulings as final.

5            The court also has reviewed the government's

6    sentencing memorandum, wherein it requests a guidelines

7    sentence.

8            The court has also reviewed the defendant's

9    sentencing memorandum in which defendant requests a variance

10   below the applicable advisory guideline sentencing range, with

11   mental health and substance abuse evaluation and dual

12   diagnoses treatment conditions, and letters of support

13   attached to defendant's sentencing memorandum.

14           The court has also reviewed a statement from one of

15   the police officers who was injured during the May 30, 2020

16   civil disorder.

17           Finally, the court has reviewed the sentencing

18   recommendation prepared by the probation office.

19           Sir, on June 2, 2021, you entered a plea of guilty in

20   this courtroom to count one of a one-count indictment at

21   criminal number 20-00169, charging you with obstruction of law

22   enforcement during a civil disorder in violation of Title 18

23   United States Code Section 231(a)(3) and Section 2.  Correct,

24   sir?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Following your guilty plea, I directed

2     the probation office to prepare a pre-sentence investigation

3     report, which I've reviewed along with the addendum and the

4     sentencing recommendation of the probation office.

5          Pursuant to the standing order -- pursuant to Federal

6     Rule of Criminal Procedure 32(e)(3), the Court finds it's not

7     appropriate to disclose the recommendation of the probation

8     office to defendant, his counsel, nor to counsel for the

9     government; however, sir, in determining your sentence, the

10    court will not consider any matter that's not previously been

11    disclosed to you or your attorney other than this

12    recommendation.

13    Counsel, have you reviewed the pre-sentence investigation

14    report, addendum thereto and discussed them with your client?

15          MR. DEMATT:  Yes, I have, Your Honor.

16          THE COURT:  Are there any errors in the pre-sentence

17    investigation report or addendum that you have not previously

18    called to the court's attention.

19          MR. DEMATT:  Nothing additional, Your Honor.

20          THE COURT:  Sir, have you reviewed the pre-sentence

21    investigation report, addendum thereto, tentative findings of

22    this court and other matters and discussed them with your

23    attorney?

24          THE DEFENDANT:  Yeah.

25          THE COURT:  Counsel, is there any legal cause why

1  sentence should not be pronounced?

2          MR. DEMATT:  No, Your Honor.

3          THE COURT:  Anything else you would like to say or

4  the defendant would like to say, now would be the appropriate

5  time, please.

6          MR. DEMATT:  Thank you, Your Honor.  First of all,

7  I'm not sure Mr. Augustyniak-Duncan intends to address the

8  court or not, but I do wish to focus on a couple of issues

9  here.

10          THE COURT:  Please.

11          MR. DEMATT:  With respect to our request for a

12  variance, Judge, as can be seen in the pre-sentence

13  investigation report, Mr. Augustyniak-Duncan did have a very

14  extensive -- does have a very extensive mental health history

15  as well as a very extensive substance abuse history.  And it

16  certainly seems pretty clear, as you look at his criminal

17  history and, you know, the issues that he's had, that that is

18  really the root cause of all of the troubles that he has dealt

19  with during his life.

20          And it appears that when he does get some treatment

21  that he does well, he can be productive.  In fact, not too

22  long before the pandemic hit, he was working and, I believe,

23  things were -- he was moving in the right direction.

24          Unfortunately, the pandemic did hit, and as a result

25  of that, he lost his work because the restaurant shut down,

1    and that's where he had been working.  He -- you know, it's

2    kind of anecdotally, I think we're all familiar with the fact

3    that with the isolation that was caused by the pandemic, a lot

4    of mental health issues became exacerbated for a lot of

5    individuals.  And I'll submit to the court that's exactly what

6    happened here, which ultimately led to the unfortunate

7    incident that brings him before you.

8          While he -- while he's been incarcerated, as well,

9    Your Honor, he's been subjected to much harsher conditions

10   than some people incarcerated in non-COVID times.  The freedom

11   of movement is much more greatly restricted during COVID,

12   subjected him to quarantines, subjected him to things like 23

13   hours in his cell per day.  And in fact, one of the times

14   we've had a hearing scheduled, it had to be rescheduled

15   because of the fact that Mr. Augustyniak-Duncan actually had

16   been diagnosed with COVID-19 while at the Allegheny County

17   Jail.

18         So under these extra harsh conditions, you know, I

19   would submit that a day in Allegheny County Jail over the past

20   year and a half, two years, is a much harsher sentence than a

21   day in Allegheny County Jail would have been prior to the

22   COVID-19 pandemic.  And that's something that should be taken

23   into account with respect to what an appropriate sentence is

24   in this case.

25         Bottom line here though, is that I believe that the

1  appropriate sentence in this case should take into account the

2  mental health and substance abuse history, and address that

3  root cause.  Because if he's able to tackle that, conquer

4  that, those issues, then he can be productive -- he will be

5  productive and he will not have further legal issues in the

6  future.  If he's not put in the right type of treatment, if he

7  doesn't have a dual diagnoses evaluation and sort of treatment

8  that would be appropriate along those lines, he's just

9  destined to fail.  So these are all things, I believe, should

10  be taken into account in the interest of justice.

11        Then finally, Mr. Augustyniak-Duncan's mother is

12  currently residing in Palm Coast, Florida, which, according to

13  my research, looks like it's in the Middle District of

14  Florida.  And if he -- whenever he does get released, he does

15  intend to relocate to that area since his mother is down there

16  and she's basically his biggest support system.  We would

17  request that a recommendation be made by this court that he be

18  placed as close to the Middle District of Florida as possible.

19        THE COURT:  Is that like the Orlando area?

20        MR. DEMATT:  Yeah, it's actually kind of -- it's like

21  a gerrymandered district, to be honest with you.  It's kind of

22  between Jacksonville and Daytona.

23        THE COURT:  Do you have any recommendation to any

24  training he would like to receive while incarcerated?

25        MR. DEMATT:  Carpentry, apparently, Your Honor.

1          THE COURT:  And any request for the residential drug

2     treatment program?

3          MR. DEMATT:  Yes.

4          THE COURT:  On behalf of the government, any

5     objection to defendant being incarcerated as close as possible

6     to the Middle District of Florida, that he receive mental

7     health evaluation and treatment, if necessary?  And third,

8     that he receive training in carpentry or some other

9     construction trade, and that he be evaluated and admitted to

10    the 500-hour residential drug treatment program?

11         MR. LUSTY:  No, Your Honor.

12         THE COURT:  I'll so make those four recommendations.

13         Anything you would like to say, sir?

14         THE DEFENDANT:  Yes.  I just wanted to say that if

15    I'd have been busy at the time and had been on a schedule and

16    doing something other than sitting in my house, watching what

17    was going on on the news and on my medication, that I would

18    have made a better choice to stay at home.  And I kick myself

19    all the time for not just staying home.  And I know I could

20    make better choices in the future.  I just need to stay on top

21    of my mental health and my drug issues and that's really all I

22    have.

23         THE COURT:  Well, that's a very mature statement so I

24    thank you for that.  And your selection of carpentry is a wise

25    one.  My dad was a carpenter, it's a very satisfying trade.

1    So I compliment you on that choice also.

2              Are you satisfied with the service and representation

3    provided by your attorney?

4              THE DEFENDANT:  I am.

5              THE COURT:  Has he done everything you've asked him

6    to do?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Has he done anything you believe he

9    should not have done?

10             THE DEFENDANT:  No.

11             THE COURT:  On behalf of the government?

12             MR. LUSTY:  Yes, Your Honor.  Just briefly, to

13   supplement the sentencing memorandum.  Your Honor had the

14   opportunity to observe the video in this case of the incident,

15   and you've had several of the other defendants so this court

16   has a good understanding of what was going on that day.

17             And the defendant's actions, you can see from the

18   video, there was a crowd of people and some of the individuals

19   in the crowd, the defendant included, chose to take advantage

20   of what they thought was their anonymity.  And take a piece of

21   concrete or two pieces of concrete and throw them towards

22   uniformed police officers.  30 minutes later, there was

23   another situation where there was a pipe the defendant took

24   and he threw it towards uniformed police officers.

25             The fact that there were officers there, trying to

1    maintain order, or to reestablish order, what people like the

2    defendant and other individuals did was just completely

3    undermine the peaceful protest.  And, you know, the defendant

4    took advantage of the fact that there was a situation where

5    there was a large crowd and he served to further escalate the

6    situation.  These were officers who were simply trying to do

7    their jobs that day.  And you know, whether or not we can show

8    specifically that the defendant injured the officers when he

9    threw the concrete, there's clearly circumstantial evidence

10    that he did.  And if not, clearly it shows that throwing

11    pieces of concrete could have caused injuries, including

12    concussions or other serious injuries.

13          Based on that, the government believes that, as other

14    defendant's were sentenced within the guidelines, the

15    guideline range sentence is appropriate in this case.

16          THE COURT:  United States sentencing guidelines are

17    advisory only.  The court has discretion to deviate or vary

18    from the guidelines after considering the relevant sentencing

19    factors set forth in Title 18 United States Code Section

20    3553(a).  The court must also rule on any motions for

21    departure or requests for variance.

22          Before the court considers any motion for departure

23    or request for variance, as stated in my tentative findings of

24    facts and conclusions of law, which I previously adopted as

25    final, the court finds that the offense -- defendant's offense

1    level is 15, that he has a criminal history of VI, and that

2    the sentencing guidelines range is 41 to 51 months

3    imprisonment, supervised release of one to three years, a fine

4    of $7,500 to $75,000, a special assessment of $100.  Further,

5    defendant's guideline range falls within Zone D of the

6    guidelines, so defendant is not eligible for probation.

7             Is my statement as to defendant's offense level,

8    criminal history category and guidelines range correct?

9             MR. LUSTY:  Yes, Your Honor.

10            THE COURT:  Agreed?

11            MR. DEMATT:  Agreed, Your Honor.

12            THE COURT:  Understand, sir?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Defendant's request for downward

15   variance -- requests a downward variance from the advisory

16   guideline sentencing range, as I will explain in detail in a

17   few moments.  Taking into consideration the factors set forth

18   in Title 18 United States Code Section 3553(a), as applied to

19   this case, defendant's request for downward variance is denied

20   because the court finds a sentence within the advisory

21   guidelines is sufficient, but no greater than necessary, to

22   satisfy the purposes of sentencing, including just punishment,

23   deterrence, protection of the public, and rehabilitation of

24   the defendant.

25            Anything else on behalf of the government before I

1    pronounce sentence?

2            MR. LUSTY:  No, Your Honor.

3            THE COURT:  On behalf of the defendant?

4            MR. DEMATT:  No Your Honor.

5            THE COURT:  Sir, pursuant to the Sentencing Reform

6    Act of 1984, it is the judgment of this court that the

7    defendant be sentenced to 41 months imprisonment, which is at

8    the low end of the guidelines range.  Defendant's term of

9    imprisonment is to be followed by three years of supervised

10   release.

11           Within 72 hours of release from the Bureau of

12   Prisons, defendant shall report in person to the probation

13   office in the district in which he's released to be placed on

14   supervision.  While on supervised release, defendant shall not

15   commit another federal, state or local crime, shall comply

16   with the standard conditions that have been adopted by this

17   court and shall comply with the following additional

18   conditions:

19           One, defendant shall not illegally possess a

20   controlled substance.  Supervised release must be revoked for

21   possession of a controlled substance.

22           Two, defendant shall not possess a firearm,

23   ammunition, destructive device or other dangerous weapon.

24   Supervised release must be revoked for possession of a

25   firearm, ammunition, destructive device or other dangerous

1    weapon.

2           Three, defendant shall participate in a program of

3    testing, and if necessary, treatment for substance abuse, said

4    program to be approved by the probation officer until such

5    time defendant is released from the program by the probation

6    officer and/or the Court.  Further, the defendant shall be

7    required to contribute to the cost of services for any such

8    treatment in an amount to be determined by the probation

9    officer, but no to exceed actual costs.  The defendant shall

10   submit to one drug urinalysis within 15 days of being placed

11   on supervision, and at least two periodic tests thereafter.

12          Four, defendant shall not purchase, possess and/or

13   use any substance or device designed to alter in any way or

14   substitute defendant's urine specimen for drug testing.  In

15   addition, defendant shall not purchase, possess and/or use any

16   device or devices designed to be used for submission of a

17   third party drug urine specimen.

18          Five, defendant shall submit his person, property,

19   house, residence, vehicle, papers, business or place of

20   employment to a search conducted by a United States probation

21   officer at a reasonable time and in a reasonable manner based

22   upon a reasonable suspicion of contraband or evidence of a

23   violation of a condition of supervision.  Failure to submit to

24   such a search may be grounds for revocation.  Defendant shall

25   inform any other residents that the premises may be subject to

1    searches pursuant it this condition.

2            Six, defendant shall participate in a mental health

3    assessment and/or treatment program approved by the probation

4    officer until such time defendant is released from the program

5    by the probation officer and/or the court.  Defendant shall be

6    required to contribute to the cost of services in an amount to

7    be determined by the probation officer, but not to exceed

8    actual costs.  The probation office is authorized to release

9    defendant's pre-sentence investigation report to the treatment

10   provider, if so requested.

11           Seven, defendant shall participate in the United

12   States Probation Office's Work Force Development Program as

13   directed by the probation officer.

14           Eight, defendant shall cooperate in the collection of

15   DNA as directed by the probation officer.  Court also imposes

16   a mandatory special assessment of $100, constituting a $100

17   special assessment at each count to which the defendant has

18   pled guilty, which shall be paid to the Clerk of Court

19   forthwith.  Based upon the financial information contained in

20   the pre-sentence investigation report, court finds the

21   defendant does not have the ability to pay a fine and

22   therefore waives imposition of any fine.

23           Sir, the reason for your sentence is as follows:  The

24   court considers a sentence of 41 months imprisonment and three

25   years supervised release to be sufficient, but no greater than

1    necessary to comply with the goals of sentencing as set forth

2    in Title 18 United States Code Section 3553(a)(2), which are

3    to reflect the seriousness of this offense, to promote respect

4    for the law and provide for just punishment for this offense,

5    to afford adequate deterrence to criminal conduct, to protect

6    the public from further crimes by this defendant and to

7    provide the defendant with needed educational, vocational

8    training and medical care in the most effective manner.

9         The court has considered all the sentencing factors

10   set forth in Title 18 United States Code Section 3553(a),

11   including those presented by the government and defense, and

12   as set forth in the pre-sentence investigation report and

13   addendum thereto.

14        The court has also considered the following:  First,

15   the court has considered the nature and circumstances of the

16   offense.  Defendant pled guilty to obstruction of law

17   enforcement during a civil disorder, for his engaging in

18   serious criminal conduct that is further addressed in the

19   pre-sentence investigation report.  And the court

20   incorporates, by reference, Paragraphs 7 through 13 of the

21   pre-sentence investigation report, upon which the court bases

22   this sentence.

23        By way of summary only:  On May 30, 2020, defendant

24   repeatedly threw objects at police officers who were working

25   during a civil disorder in Downtown Pittsburgh, Pennsylvania.

1    Most significantly, at one point in the civil disorder,

2    defendant intentionally, knowingly and purposefully threw a

3    large piece of concrete directly at a line of police officers

4    while in close proximity to those officers with the intent to

5    cause bodily injury to the officers with the concrete.

6         The court finds defendant's pattern of conduct that

7    day to be outrageous.  And indeed, the court finds defendant's

8    conduct on that day to be so outrageous that even if the court

9    had agreed to defendant's position that he did not -- his

10   conduct did not constitute aggravated assault, such as the

11   offense level was calculated under Section 2A2.4 and not

12   Section 2A2.2, the court still would have imposed the sentence

13   of 41 months imprisonment.

14        Second, the court has considered the defendant's

15   criminal, family and social history and personal

16   characteristics as further outline in the pre-sentence

17   investigation report at Paragraphs 29 through 74, which the

18   court incorporates as part of the basis for his sentence

19   today.

20        By way of summary only:  Defendant is approximately

21   26 years old, graduated from high school, has worked in the

22   past at a number of restaurants, but is currently unemployed

23   and obviously is incarcerated.

24        Defendant has a significant criminal history, which

25   is why the criminal history category is VI.  His adult

1    criminal history includes convictions for simple assault, drug

2    possession twice, robbery, corruption of a minor, giving a

3    13-year-old drugs, driving under the influence of alcohol or

4    controlled substance, in particular drugs, fleeing or

5    attempting to elude an officer, driving while license was

6    suspended or revoke and resisting arrest.  He also committed

7    the instant offense while he was on state court parole.

8          Defendant has significant history of mental health

9    issues, as well as a history drug abuse.  Accordingly, both

10   mental health and drug abuse evaluation and treatment are part

11   of the sentence, both based on the recommendations I've made

12   to the Bureau of Prisons as well as during the three-year

13   period of his supervised release thereafter.

14         Third, the court has also considered the kinds of

15   sentences available for this offense and the sentencing

16   guidelines under the advisory guidelines and applicable policy

17   statements adopted by the sentencing commission.

18         And lastly, the court has considered the need to

19   avoid unwarranted sentencing disparities among defendants with

20   similar records who have been found guilty of similar conduct.

21   In particular, I believe, this sentence is consistent with the

22   other sentences that I've imposed with other defendants that

23   participated in this event, considering their particular

24   conduct, their criminal history category and other factors set

25   forth in Section 3553(a).

1          On behalf of the government, has my statement of

2    reasons adequately addressed all objections, concerns and

3    issues raised?

4          MR. LUSTY:  Yes, Your Honor.

5          THE COURT:  There are any other sentencing factors

6    under Section 3553(a) that the court has failed to address?

7          MR. LUSTY:  No, Your Honor.

8          THE COURT:  Counsel, does my statement of reasons

9    adequately address all objections, concerns and issues raised?

10          MR. DEMATT:  Yes, Your Honor.

11          THE COURT:  Are there any other sentencing factors

12    under Section 3553(a) that the court has failed to address?

13          MR. DEMATT:  No.

14          THE COURT:  Have you had an opportunity to discuss

15    with the defendant his right to appeal?

16          MR. DEMATT:  I have, Your Honor.

17          THE COURT:  Sir, you have the right to appeal from

18    the orders of his court, judgment of guilty and/or from the

19    sentence imposed.  You have the right to have a lawyer

20    represent you on appeal at no cost to you.  If you cannot

21    afford them, certified copies of the necessary records and

22    transcripts will be furnished at the expense of the United

23    States government.  If you appeal, the notice of appeal must

24    be filed within 14 days of today, otherwise you will lose your

25    right to appeal.  If you request, the Clerk of Court will

1    immediately prepare and file a notice of appeal on your

2    behalf.

3              Do you wish to appeal, sir?

4              THE DEFENDANT:  No.

5              THE COURT:  Do you understand if you change your mind

6    and decide to appeal, any notice of appeal must be filed

7    within 14 days of today, otherwise you will lose your right to

8    appeal?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And if you change your mind and decide to

11   appeal, you will lose your current counsel for any appeal.

12   Correct?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Anything else on behalf of the

15   government?

16             MR. LUSTY:  No.  Thank you, Your Honor.

17             THE COURT:  Defendant?

18             MR. DEMATT:  No, Your Honor.

19             THE COURT:  Sir, you're a relatively young man,

20   certainly from my vantage point.  I thought your statement

21   today was very mature.  And I think you know the way forward,

22   if you so choose to follow it.

23             I've done everything I can as part of my

24   recommendations for your incarceration and for the time that

25   you're on supervised release to get you the care and

1    evaluations that are necessary.  So I just want to wish you

2    well.  And if you stay wise in what you've told me and get a

3    trade, I think you can have a good life once this -- your

4    incarceration is over.  I think you've been incarcerated since

5    that incident.  Correct?

6              MR. DEMATT:  Yes, Your Honor.

7              THE COURT:  So all that time will count as federal

8    time, which will be calculated by the Bureau of Prisons.  If

9    there's any issue in that regard, just reach out to your

10   counsel and he'll get it clarified.  But his total time, was

11   he arrested totally on federal time or has he had some state

12   time resulting from this incident?

13             MR. LUSTY:  So initially, he had a state detainer.  I

14   believe his bond was revoked at some point in this case.

15             MR. DEMATT:  I know there's definitely going to be a

16   calculation issue here because there's some state time.

17             THE COURT:  Well, I would just ask that counsel for

18   the government and defendant work together if there's an issue

19   so that the Bureau of Prisons has accurate information in

20   order to make the evaluation so that hopefully most of his

21   time will count as federal time.

22             So the two of you working together can certainly help

23   the defendant in that regard.  Defendant is remanded to the

24   custody of the United States Marshal Service for transfer to

25   the Bureau of Prisons.  Everyone should remain seated until

24

1    the marshals remove the defendant.  I wish you well, sir.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  Be wise.

4              Thank you, counsel.

5              MR. LUSTY:  Thank you, Your Honor.

6              MR. DEMATT:  Thank you.

7              THE COURT:  I adjourn this hearing.

8                    C E R T I F I C A T E

9              I, MARSIA L. BALOBECK, certify that the foregoing
     is a correct transcript from the record of proceedings in the
10   above-entitled case.

11

12    \s\ Marsia L. Balobeck           10/27/2022
     MARSIA L. BALOBECK                Date of Certification
13   Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25